UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

No. 09 Civ. 5378 (RJS)

DONNA DECURTIS,

Plaintiff,

VERSUS

UPWARD BOUND INTERNATIONAL, INC., *et al.*,

Defendants.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-27-12

MEMORANDUM AND ORDER
September 27, 2012

RICHARD J. SULLIVAN, District Judge:

In 2009, Plaintiff Donna DeCurtis ("DeCurtis") commenced this action against Defendant Thomas Ferrandina ("Ferrandina"), alleging sexual harassment, discrimination, and retaliation in violation of the New York State Human Rights Law, N.Y. Exec. Law § 296, *et seq.* ("NYSHRL"), the New York City Human Rights Law, N.Y.C. Admin. Code § 8–101, *et seq.* ("NYCHRL"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Ferrandina failed to respond to DeCurtis's suit, and the Court entered a default judgment against him. Ferrandina now moves, pursuant to Federal Rule of Civil Procedure 60(b), to vacate and set aside the default judgment, contending that the judgment is void or, alternatively, excused by mistake, inadvertence, surprise, or excusable neglect. Ferrandina further contends that the judgment would result in extreme and undue hardship. For the reasons set forth below, the Court denies Ferrandina's motion in its entirety.

I. BACKGROUND[1]

Ferrandina supervised DeCurtis at the now-defunct Manhattan-based travel agency, Upward Bound International, Inc. ("Upward Bound"), from 2003 to 2006. As discussed at length in the Court's prior Order, DeCurtis alleged that Ferrandina repeatedly sexually harassed her during that time, touching DeCurtis without her

___
[1] The facts in this section are taken from the Complaint ("Compl."), the parties' briefs ("Def. Mem.", "Pl. Opp'n", & "Def. Rep. Mem."), the affidavits and exhibits submitted in connection with the instant motion, as well as the Court's prior Order awarding damages in this matter, *see DeCurtis v. Upward Bound Int'l, Inc.*, No. 09 Civ. 5378 (RJS), 2011 WL 4549412 (S.D.N.Y. Sept, 27, 2011).

consent, sending explicit emails and making explicit comments to DeCurtis, and calling DeCurtis late at night and on weekends to talk about sex. When DeCurtis objected to his behavior, Ferrandina threatened her job in statements both to DeCurtis and her employer. *See DeCurtis v. Upward Bound Int'l, Inc.*, No. 09 Civ. 5378, 2011 WL 4549412, at *1-2 (S.D.N.Y. Sept. 27, 2011); *see also* Decl. of Valdi Licul, dated Jan. 11, 2012, Doc. No. 96 ("Licul Decl."), Ex. W (reproducing emails in which Ferrandina demanded that DeCurtis be fired for insubordination).

DeCurtis first complained about Ferrandina's conduct to Upward Bound's human resources department in August 2004, to no avail. However, in May 2006, other Upward Bound employees complained about the harassment, prompting an investigation conducted by outside counsel that deemed Ferrandina's conduct inappropriate and his allegations of DeCurtis's complicity unsupported. The investigation revealed that, excepting Ferrandina's conduct, Upward Bound was not a generally hostile environment. (Licul Decl. Ex. X at 16.) Upward Bound subsequently fired Ferrandina in August 2006. Thereafter, Upward Bound and its owner allegedly retaliated against DeCurtis for her complaints by limiting her responsibilities and moving her to an isolated office, before ultimately firing her in April 2008. *DeCurtis*, 2011 WL 4549412, at *1-2.

DeCurtis filed an EEOC complaint about the harassment on June 6, 2008 and received a Right to Sue Letter on June 1, 2009. (Pl. Opp'n at 19.) DeCurtis then filed her original Complaint against Ferrandina and Upward Bound on June 10, 2009, alleging discrimination and retaliation under the NYSHRL, NYCHRL, and Title VII.[2] DeCurtis sought back pay, compensatory damages, punitive damages, interest, and attorneys' fees and costs. (Compl. at 13-14.)

DeCurtis claims to have served the Summons and Complaint on Ferrandina by personal delivery on June 13, 2009 (Pl. Opp'n at 1-2), citing the process server's affidavit for support (*id.* at 2 (citing Licul Decl. Ex. A); *see* Affidavit of Service, Doc. No. 4). In the affidavit, the process server reported serving Ferrandina at his residence, noting that Ferrandina was "identified by self admission." (Licul Decl. Ex. A.) The process server described Ferrandina as a white male with gray hair, approximately sixty years of age, with an approximate weight of 175 pounds and height of five feet, nine inches. (*Id.*)

After this initial service, DeCurtis sent approximately twenty additional items to Ferrandina related to her claims, resulting in dozens of notices being left at his residence. (*See* Pl. Opp'n at 1-6; Licul Decl. Exs. B-V.) These items included, *inter alia*, schedules of court conferences, discovery requests, an Order to Show Cause as to why a default judgment should not be entered against Ferrandina, orders to appear for a hearing and a deposition, and notice of DeCurtis's intent to file an Amended Complaint naming Upward Bound's successor entities as co-defendants.[3] (*Id.*; *see* Order to Show Cause, dated Sept. 28. 2009, Doc. No. 13.) DeCurtis employed certified mail, registered mail, and regular mail; FedEx; and, for the Order to Show Cause, process service on

---

[2] The Court dismissed DeCurtis's Title VII claims against Ferrandina in its prior Order. *See DeCurtis*, 2011 WL 4549412, at *2 n.2.

[3] DeCurtis did not attempt to serve Ferrandina with the Amended Complaint, despite being directed by the Court to do so. (Order, Doc. No. 21; Pl. Opp'n at 5; Def. Mem. at 5.)

2

different days at different times, finally relying on the "nail and mail" method, to apprise Ferrandina of each development in the litigation. (Pl. Opp'n at 15; Licul Decl. Exs. B-V.) At no time prior to the instant motion did Ferrandina appear or otherwise respond to the Complaint, correspondence, or orders issued in this case.

On September 21, 2009, the Clerk of Court certified that Ferrandina was in default (*see* Order to Show Cause, dated Sept. 28. 2009, Doc. No. 13), and on April 27, 2010, the Court entered judgment against Ferrandina, finding him liable under the original Complaint as to DeCurtis's state and city law claims (Default Judgment, Doc. No. 49). On October 4, 2011, after an inquest into DeCurtis's damages, the Court found Ferrandina and his co-defendants jointly and severally liable in the amount of $845,309.11.[4]  *See DeCurtis*, 2011 WL 4549412, at *1, *9; *see also* Default Judgment, Doc. No. 81.

With respect to service of the Complaint at his home on June, 13, 2009, Ferrandina now asserts that he is not the man described in the affidavit. (Def. Mem. at 4.) Though he admits that the listed address is his residence (Aff. of Thomas Ferrandina, dated Dec. 21, 2011, Doc. No. 93 ("Ferrandina Aff."), ¶ 18) and that he was the only man living at that address (Tr. of Nov. 21, 2011 at 5), he challenges the process server's description of his appearance, stating that he was only fifty-three at the time, with brown hair, standing five feet, five inches tall (Def. Mem. at 4; *see* Ferrandina Aff. Ex. 2). As to the assorted mailings, FedEx packages, and "nail and mail" service discussed above, Ferrandina now disputes ever receiving service or correspondence from DeCurtis in this matter. (Def. Rep. Mem. at 6-7.) To explain this breakdown in domestic mail service, Ferrandina points to discrepancies in only five of DeCurtis's nearly twenty delivery receipts: in three of these, Ferrandina's street name was misspelled by one letter, and in two others, Ferrandina's last name was altered by one letter. (*Id.* at 7.) Ferrandina also notes that his street name is similar to that of a street located in an adjacent town, but does not provide evidence that correspondence was mistakenly directed there. (*Id.* at 7 n.7.)

Despite denying receipt of these communications, Ferrandina *does* admit to receiving two notices of the litigation via regular mail at his residence. (Def. Mem. at 8.) The first was a notice of appearance by Upward Bound's attorney, dated July 24, 2009, on which Ferrandina was copied. (*Id.*) The second was a notice from DeCurtis's attorney, dated October 10, 2011, indicating that damages had been entered against Ferrandina. (*Id.* at 1.) Ferrandina contends that, as a former employee of Upward Bound, he understood the first letter to state that Upward Bound's attorney would be representing him in the case. (*Id.* at 8.) It was not until reading the second letter that Ferrandina realized the gravity of his supposed error.

Ferrandina, through counsel, filed this motion to vacate shortly after his receipt of the second letter, claiming under Federal Rule of Civil Procedure 60(b) that: (1) the judgment was void for lack of personal jurisdiction; (2) alternatively, the default was the result of "mistake, inadvertence, surprise, or excusable neglect"; and (3) finally, the judgment should be vacated for "any other reason that justifies relief." *See*

---

[4] Ferrandina was not alone in default. Of the five named defendants, four, including Ferrandina, defaulted. *See DeCurtis*, 2011 WL 4549412, at *2. However, Upward Bound, unlike Ferrandina, filed an Answer to the original Complaint before eventually defaulting. (*See* Answer, Doc. No. 10.)

3

Fed. R. Civ. P. 60(b)(4), (1), (6); Mot. to Vacate, dated Dec. 21, 2011, Doc. No. 90; Def. Mem. at 2-3.

Following briefing, the Court heard oral argument on September 14, 2012. (*See* Doc. No. 107.) At the argument, defense counsel requested that Ferrandina be allowed to testify at an evidentiary hearing so that the Court could "make a determination for [itself] whether [it] believe[d] him." (Tr. of Sept. 14, 2012 at 17:25-18:1.) Though the Court warned of the consequences of "coming in before me and lying," Ferrandina's counsel reaffirmed his request (*id.* at 19:16-17), and the Court granted the hearing, which was scheduled for September 24, 2012 at 9:30 a.m. (Doc. No. 107). However, by letter dated September 20, 2012, Ferrandina's counsel stated that he "wishe[d] to respectfully withdraw his request" after "discussing the matter at length with [Ferrandina]." (*See* Doc. No. 108.) The motion was then deemed fully submitted.

## II. LEGAL STANDARD

The decision to vacate a default judgment is left to the "sound discretion of the district court." *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 166 (2d Cir. 2004) (internal quotation marks omitted). Though there is a "strong preference" for adjudications on the merits, with "all doubts . . . resolved in favor of the party seeking relief," *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005), default procedures nonetheless "provide a useful remedy when a litigant is confronted by an obstructionist adversary," *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *see Saleh v. Francesco*, No. 11 Civ. 438 (PKC), 2011 WL 5513375, at * 3 (S.D.N.Y. Nov. 10, 2011). Thus, in analyzing a motion to vacate, a court must balance "serving the ends of justice and preserving the finality of judgments," while remaining mindful of the admonition that "final judgments should not be lightly reopened." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986) (internal quotation marks and citations omitted).

## III. DISCUSSION

Pursuant to Federal Rule of Civil Procedure 60(b), a district court may grant relief from a final judgment, *inter alia*, where the judgment itself is "void"; where the default was the result of "mistake, inadvertence, surprise, or excusable neglect"; or for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(4), (1), (6).

### A. Validity of Judgment

Under Rule 60(b)(4), a judgment is void if it is entered against a party over whom the court lacks personal jurisdiction. *Velez v. Vassallo*, 203 F. Supp. 2d 312, 317-18 (S.D.N.Y. 2002). "Valid service of process is a prerequisite to a district court's assertion of personal jurisdiction over a defendant." *Am. Inst. of Certified Pub. Accountants v. Affinity Card, Inc.*, 8 F. Supp. 2d 372, 375 (S.D.N.Y. 1998) (citing *Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 103 (1987)). Accordingly, a "judgment entered against a party not subject to the personal jurisdiction of the court [due to] defective service . . . must be set aside as a matter of law." *Id.* (citations omitted).

Ferrandina asserts that the judgment is void because (1) he was not served with the Complaint, and (2) DeCurtis made no effort to serve him with the Amended Complaint. For the reasons set forth below, both arguments fail.

4

### 1. Service of the Complaint

A process server's sworn affidavit establishes a presumption of service, *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002), but "[a] defendant's sworn denial of receipt of service . . . rebuts [that] presumption . . . and necessitates an evidentiary hearing." *Id.* (citation and internal quotation marks omitted). However, "no evidentiary hearing is required where the defendant fails to swear to specific facts to rebut the statements in the process server's affidavits." *Id.* at 58 (internal quotation marks omitted). Further, courts may discredit denials of service where there is "ample evidence [to] conclude that [the defendant's] statements lacked credibility." *Id.* Finally, "on a motion to vacate a default judgment based on improper service of process where the defaulting defendant had actual notice of the original proceeding but delayed in bringing the motion," the defendant bears the burden of proving that the purported service did not occur. *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 299 (2d Cir. 2005).

Ferrandina claims that he was never served with the Summons and original Complaint. To support his claim, Ferrandina quibbles with the details of the process server's affidavit, pointing to discrepancies in height (four inches), hair color (dyed brown, not gray), and age (fifty-three, not sixty). (Def. Mem. at 4.) Ferrandina does not dispute the account of his weight, nor does he claim to have been away from his home at the time service was reportedly effected. While a sworn affidavit denying service typically requires further investigation by the court, *Old Republic Ins. Co.*, 301 F.3d at 57, conclusory denials similar to Ferrandina's have been found insufficient to necessitate a hearing. *See, e.g., Cablevision Sys. N.Y.C. Corp. v. Okolo*, 197 F. App'x 61, 62 (2d Cir. 2006) (holding that defendant's general denial of service, coupled with minor disagreements with process server's physical description of recipient, were insufficient to merit an evidentiary hearing); *United States v. Riser*, No. 10 Civ. 4550 (DLI), 2011 WL 1004566, at *2 (E.D.N.Y. Mar. 16, 2011) (finding defendant's "vague and conclusory denial" of service in affidavit and statement that no occupant of residence fit process server's description were insufficient to vacate default judgment); *Single Source Roofing Corp. v. 228 Granite Ave. Realty, LLC*, No. 05 Civ. 1241 (NG) (SMG), 2005 WL 3113421, at *3 (E.D.N.Y. Nov. 22, 2005) (dismissing defendant's assertion that he had not been served where the only evidence was that the process server had overestimated his height by four inches).

In light of this case law, and given the nature of Ferrandina's general and conclusory denial of service, the Court would have been justified in denying Ferrandina's request for an evidentiary hearing. Nevertheless, taking the preference for adjudication seriously, the Court granted a hearing at Ferrandina's request so that he could personally present his case. (*See* Doc. No. 107.) As noted above, just days before the hearing was to take place, Ferrandina abruptly changed course, and declined the opportunity to present evidence and subject himself to cross-examination. Accordingly, the Court now has little difficulty dismissing as "self-serving and unreliable [Ferrandina's] bald" denials of service. *See Old Republic Ins. Co.*, 301 F.3d at 59. Because Ferrandina admits that he had actual notice of these proceedings as early as July 2009 and thus bears the burden of disproving service, *see Burda*, 417 F.3d at 299, and because he has clearly failed to meet this burden, the Court finds that

Ferrandina was properly served and therefore subject to the personal jurisdiction of this Court.

2. Service of the Amended Complaint

Alternatively, Ferrandina claims that the Court lacks personal jurisdiction because DeCurtis did not attempt to serve him with the Amended Complaint. (Def. Mem. at 4.) Pursuant to Federal Rule of Civil Procedure 5(a)(2), "[n]o service is required on a party who is in default for failing to appear[, b]ut a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4." Thus, when a defendant is in default on one complaint, he need not be served with a subsequent complaint so long as the pleading does not add any claims or new factual predicates. *See Finkel v. Hall-Mark Elec. Supplies Corp.*, No. 07 Civ. 2376 (NGG), 2009 WL 3401747, at *3 (E.D.N.Y. Oct. 21, 2009) (holding that defendant in default on original complaint need not be served with amended complaint where no claims were added against it); *Johnson v. Dumphy*, No. 09 Civ. 2758 (SMG), 2011 WL 6101957, at *1 n.2 (E.D.N.Y. Nov. 14, 2011) (noting that addition and deletion of defendants in amended complaint was not a change triggering service for defendants already in default on original complaint).

Here, Ferrandina was certified in default on the original Complaint on September 21, 2009, more than three months prior to DeCurtis filing her Amended Complaint. Moreover, DeCurtis added no new claims or factual predicates against Ferrandina in the Amended Complaint, instead only inserting Upward Bound's successor entities as co-defendants. Accordingly, service on Ferrandina was not required by Rule 5(a)(2).

While Ferrandina puts significant weight on DeCurtis's addition of "aider and abettor" to the description of her NYSHRL and NYCHRL claims against Ferrandina in the Amended Complaint (Def. Mem. at 4-5), this phrase amounts to a mere clarification of the claims DeCurtis asserted against Ferrandina in her original Complaint. *See* NYSHRL § 296(6) (declaring it an "unlawful discriminatory practice for any person to aid, abet, incite, compel[,] or coerce the doing of any of the acts forbidden under this article"); *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004) (noting that language of NYCHRL is "virtually identical" to NYSHRL). Regardless of the addition of the phrase, Ferrandina faced individual liability under the NYSHRL and NYCHRL in both of DeCurtis's Complaints. *Compare* Compl. at ¶¶ 57-58 (discrimination under NYSHRL); ¶¶ 60-61 (retaliation under NYSHRL); ¶¶ 63-65 (discrimination under NYCHRL); ¶¶ 67-69 (retaliation under NYCHRL), *with* Am. Compl. at ¶¶ 66-95. Thus, DeCurtis's allegation of aider and abettor liability did not constitute a new claim or factual predicate requiring service of the Amended Complaint on Ferrandina.

Ferrandina further contends that Rule 5(a)(2) did not excuse service because DeCurtis added claims and defendants with whom Ferrandina was jointly and severally liable. (Def. Rep. Mem. at 4.) This argument too must fail. First, DeCurtis asserted no new prayer for relief in the Amended Complaint, simply reaffirming her request for back pay, compensatory damages, punitive damages, interest, and attorneys' fees and costs. (*Compare* Compl. at 13-14, *with* Am. Compl. at 19.) Further, as made clear in the Court's prior Order, DeCurtis's state and city law claims against Ferrandina provide a basis for each of the types of monetary awards granted.

*See DeCurtis*, 2011 WL 4549412, at *3-6. Moreover, Ferrandina's conduct was the lynchpin for each finding of liability, be it his – and only his – sexual harassment of DeCurtis or his lobbying for DeCurtis's termination. *Cf. Finkel*, 2009 WL 3401747, at *4 (holding defendant in default on original complaint without service of amended complaint despite exposure to joint and several liability based on amended complaint).

Finally, Ferrandina asserts that "[h]ad [he] been served with the 'clarification' of DeCurtis's Amended [C]omplaint, it is plausible that he would have reconsidered that mistaken assumption [that he would be represented by Upward Bound's attorney,] which resulted in his default." (Def. Rep. Mem. at 4.) Putting aside the fact that Ferrandina would have had to accept service or open his mail to receive such notice, it is difficult to determine how the addition of "aider and abettor" would alert him to the risk of individual liability when having his name listed repeatedly as a defendant in the original Complaint did not.

Thus, because Ferrandina was in default on the original Complaint when DeCurtis filed the Amended Complaint, and because the Amended Complaint added no new claims or grounds for liability against Ferrandina, the Court finds that it had proper jurisdiction to enter a default judgment against him.

### B. Mistake, Inadvertence, Surprise, or Excusable Neglect

Pursuant to Rule 60(b)(1), a court may vacate a default judgment where the default is the result of mistake, inadvertence, surprise or excusable neglect. To determine whether a party is entitled to relief under the Rule, courts weigh: "(1) [w]hether the default was willful[;] (2) whether the defendant demonstrates the existence of a meritorious defense[;] and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice." *State St. Bank & Trust Co.*, 374 F.3d at 166-67. Though each factor merits consideration, generally, a "default should not be set aside when it is found to be willful." *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 507 (2d Cir. 1991).

Ferrandina asserts that his claim satisfies all three factors. However, for the reasons stated below, he fails on the first alone, with the second and third further weighing in DeCurtis's favor.

### 1. Willfulness

Mere negligence or carelessness is insufficient to support a finding of willfulness. *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). However, willfulness may be found where conduct is "egregious and . . . not satisfactorily explained." *Id.* at 738. Thus, "[c]ourts have held the default to be willful when a defendant simply ignores a complaint without action." *Todtman, Nachamie, Spizz & Johns, P.C. v. Ashraf*, 241 F.R.D. 451, 454 (S.D.N.Y. 2007), *aff'd*, 316 F. App'x 51 (2d Cir. 2009) (collecting cases).

DeCurtis has submitted nearly twenty notices that she sent to Ferrandina concerning this suit, including two affirmations of service for the Summons and Complaint and the Order to Show Cause. Ferrandina denies receiving all but the notice of the award. Yet he provides no satisfactory explanation for their unsuccessful delivery, nor does he claim any failure to receive mail generally, admitting instead that he received two notices related to this case via regular mail. It is therefore

7

impossible to escape the conclusion that Ferrandina "received the notices of this action and deliberately decided not to accept, open, read or act on them, deliberately deciding not to appear in this case." *Mason Tenders Dist. Council of Greater N.Y. v. WTC Contracting, Inc.*, No. 10 Civ. 0700 (DLC), 2011 WL 4348152, at *3 (S.D.N.Y. Sept. 16, 2011); *see also Roundball Enters., Inc. v. Richardson*, 99 F.R.D. 174, 176 (S.D.N.Y. 1983) (declining to find willfulness where defendant could not remember being served, but calling it a "close question" when service was *only* notice sent by plaintiff to defendant).

Further, Ferrandina admits to being aware of the suit as early as July 2009, only one month after Plaintiff filed the original Complaint, when he received the notice of appearance filed by Upward Bound's attorney. (Def. Mem. at 8.) Ferrandina claims to have interpreted the letter to mean that Upward Bound's attorney would represent him; however, this explanation strains credulity. First, Upward Bound had fired Ferrandina years earlier. Second, the letter repeatedly refers to the client as Upward Bound, while Ferrandina is merely carbon copied, and is addressed to the Court, not Ferrandina. (*See* Ferrandina Aff. Ex. 1.) Third, Ferrandina never reached out to Upward Bound's counsel to coordinate a defense or inquire about the case. Finally, Ferrandina hired counsel to represent him in the earlier harassment investigation, undercutting any argument that Ferrandina and Upward Bound were naturally allied in this case or that Ferrandina was a legal neophyte. *See* Licul Decl. Ex. X at 16; *cf. Pro Tect Mgt. Corp. v. Worley*, No. 89 Civ. 3026 (CSH), 1991 WL 190582, at *3 (S.D.N.Y. Sept. 18, 1991) (declining to find willfulness where defendant's purported reason for miscommunication with counsel lacked even "the ring of truth").

However, most damning is Ferrandina's failure to testify in support of his account. Though Ferrandina's attorney initially pressed the Court to order a hearing so that it could "make a determination for [itself] whether [it] believe[d] him" (Tr. of Sept. 14, 2012 at 17:25-18:1), the implausibility of Ferrandina's claims, coupled with his subsequent refusal to appear, have made that determination simple: the Court finds that Ferrandina's default was plainly willful.

### 2. Meritorious Defense

To establish the existence of a meritorious defense, a defendant must present some evidence beyond mere conclusory denials. *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001). The test is whether "the evidence submitted, if proven at trial, would constitute a complete defense." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993). Though a defendant need not "conclusively establish the validity of the defense asserted, [he] must, nonetheless, articulate a defense with a degree of specificity which directly relates that defense to the allegations set forth in the plaintiff's pleadings and raises a 'serious question' as to the validity of those allegations." *Salomon v. 1498 Third Realty Corp.*, 148 F.R.D. 127, 130 (S.D.N.Y. 1993).

Ferrandina purports to assert a meritorious defense on the grounds that: (1) DeCurtis's claims are time barred; and (2) DeCurtis's claims are false. The Court finds that neither raises a "serious question" as to the judgment entered.

#### a. Time Bar

The statute of limitations for claims brought under the NYSHRL and NYCHRL

8

is three years. N.Y. C.P.L.R. § 214(2); N.Y.C. Admin. Code § 8-502(d). Under the continuing violation doctrine, this limitations period begins to run from the last unlawful act supporting a hostile work environment claim. *See Murdaugh v. City of New York*, No. 10 Civ. 7218 (HB), 2011 WL 798844, at *3 (S.D.N.Y. March 8, 2011). Further, this limitations period is tolled upon the filing of an EEOC complaint. *Esposito v. Deutsche Bank AG*, No. 07 Civ. 6722 (RJS), 2008 WL 5233590, at *5 (S.D.N.Y. Dec. 16, 2008) (collecting cases).

Ferrandina argues that any allegations pertaining to conduct prior to June 10, 2006 – three years before DeCurtis filed her complaint on June 10, 2009 – are time barred. (Def. Mem. at 10.) However, Ferrandina ignores both the continuing violation doctrine and EEOC tolling. The last in the series of Ferrandina's alleged advances toward DeCurtis occurred on July 27, 2006 (Pl. Opp'n at 19), bringing all of Ferrandina's unsavory conduct toward DeCurtis within the three-year limitations period. Furthermore, DeCurtis filed her EEOC complaint on June 6, 2008. (*Id.*) Thus, even discounting the continuing violation doctrine, the year-long tolling attendant to DeCurtis's EEOC complaint covers the bulk of her allegations. Accordingly, the Court finds that Ferrandina's limitations defense is without merit.

### b. Denial of Claims

Ferrandina alternatively asserts that he did not sexually harass DeCurtis and that DeCurtis engaged in the very conduct that she claims promoted a hostile work environment. (Def. Mem. at 12-13.) However, Ferrandina's conclusory denials fly in the face of DeCurtis's exhibits, which include numerous lewd emails authored by Ferrandina and the investigation report that assigns all of the blame for the hostile environment to Fernandina. (Licul Decl. Ex. X at 16.) Ferrandina attempts to support his allegations by providing photographs of himself and DeCurtis in social settings, apparently as evidence that DeCurtis did not "subjectively perceive" Upward Bound to be a hostile work environment. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). But such evidence, "if proven at trial, would [not] constitute a complete defense." *Enron Oil Corp.*, 10 F.3d at 98; *see also S.E.C. v. Breed*, No. 01 Civ. 7798 (CSH), 2004 WL 1824358, at *12 (S.D.N.Y. Aug. 13, 2004) (finding defense lacked merit under Rule 60(b)(1) where evidence consisted "almost entirely" of the defendants' affidavits). Thus, the Court finds that Ferrandina's denials of DeCurtis's claims are also without merit and are wholly insufficient to establish a meritorious defense.

### 3. Prejudice to the Non-Defaulting Party

In assessing whether vacatur would cause prejudice to the non-defaulting party, courts must determine whether the defendant's delay "result[ed] in the loss of evidence, create[d] increased difficulties of discovery, or provide[d] greater opportunity for fraud and collusion." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983). "Delay alone is not a sufficient basis for establishing prejudice." *Id.*

Despite Ferrandina's assertions to the contrary, this case involves more than "[d]elay alone." In the three years since DeCurtis filed her complaint, Upward Bound has closed its doors, making both witnesses and discovery difficult to come by. Memories are also likely to fade over far shorter periods. *See Lazic v. Dorian Owners, Inc.*, No. 10 Civ. 1824 (BMC),

9

2011 WL 319879, at *2 (E.D.N.Y. Jan. 29, 2011) (finding prejudice under Rule 60(b)(1) where "[d]efendant's delay may have well led to a fading of . . . memories"). Further, DeCurtis has already expended "considerable resources" in attempting to resolve this litigation, presenting a risk of substantial prejudice in itself. *Breed*, 2004 WL 1824358, at *13. Therefore, vacatur at this late date would cause prejudice to DeCurtis.

* * *

Because Ferrandina's default was willful, because he states no meritorious defenses, and because DeCurtis would be prejudiced by vacatur, the Court finds that Ferrandina's motion under Rule 60(b)(1) also fails.

C. Other Reasons That Justify Relief

Rule 60(b)(6) permits a court to vacate a default judgment for "any other reason that justifies relief." To obtain such relief, a party must show "extraordinary circumstances" or "extreme and undue hardship." *Lee v. Marvel Enters., Inc.*, 765 F. Supp. 2d 445, 452 (S.D.N.Y. 2011). Such relief should be afforded only sparingly. *Id.*

Ferrandina argues that the size and nature of the damages award imposes an extreme and undue hardship upon him because it includes relief for conduct that occurred after he left Upward Bound, including DeCurtis's wrongful termination. (Def. Mem. at 14.) However, Ferrandina's argument is unavailing. First, the mere size of the award does not alone justify vacatur. *See Knox v. Palestine Liberation Org.*, 248 F.R.D. 420, 425 (S.D.N.Y. 2008) (finding that the size of a $192.7 million default judgment was only a factor in granting vacatur, particularly because damages were trebled). Though Ferrandina faces sizeable liability, DeCurtis made plain in her original Complaint that she sought back pay, compensatory damages, punitive damages, interest, and attorneys' fees and costs from Ferrandina. Thus, Ferrandina's failure to respond to a complaint that carried the risk of a substantial judgment cannot support vacating the entirely foreseeable entry of that judgment.

Nor can it be said that the judgment against Ferrandina is "extraordinary," "extreme," or "undue." Clearly, without Ferrandina's conduct, there would be no award to vacate. As an initial matter, the record reflects that Ferrandina was responsible for the hostile work environment that prompted DeCurtis's claims. If Ferrandina had not "created an environment permeated with intimidation, and volatility" or "engaged in inappropriate and offensive behavior" in the office, he would not face any liability today. (Licul Decl. Ex. X at 17-18.) Likewise, Ferrandina repeatedly advocated for DeCurtis's termination, pressing Upward Bound's owner to "dismiss [DeCurtis] immediately" due to her "ongoing undermining of [Ferrandina's] authority." (*Id.* at Ex. W.) Though her firing may not have come soon enough for Ferrandina, DeCurtis's retaliation claim can certainly be traced back to Ferrandina's conduct. As such, the Court finds that the award imposed against Ferrandina is not the sort of "extraordinary circumstance" contemplated by Rule 60(b)(6).

VI. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT Ferrandina's motion to vacate the judgment pursuant to Federal Rule of Procedure 60(b) is denied in its entirety. The Clerk of the Court is

10

respectfully directed to terminate the motion pending at Doc. No. 90 and to close this case.

SO ORDERED.

_____
RICHARD J. SULLIVAN
United States District Judge

Dated: September 27, 2012
       New York, New York

\* \* \*

Plaintiff Donna DeCurtis is represented by Valdi Licul and Jeremiah Iadevaia of Vladeck, Waldman, Elias & Engelhard, P.C. 1501 Broadway, Ste. 800, New York, New York 10036.

Defendant Thomas Ferrandina is represented by Ralph Somma of the Law Office of Ralph A. Somma, 175 West Main Street, Suite One, Babylon, NY 11702, and Steven Harfenist and Charles Horn of Friedman Harfenist Kraut & Perlstein, LLP, 3000 Marcus Avenue, Lake Success, New York 11042.

11